IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| LINDA LUNDGREN | § | |
| | § | |
| V. | § | CIVIL ACTION NO. G-10-351 |
| | § | |
| EMPIRE INDEMNITY INSURANCE | § | |
| COMPANY, ET AL. | § | |

## OPINION AND ORDER

Before the Court is the Motion for Summary Judgment of Defendant, Empire Indemnity Insurance Company (Empire), which seeks summary judgment as to all claims asserted against Empire by Plaintiff, Linda Lundgren (Lundgren).

## RELEVANT FACTS

A general, unelaborate version of the facts will suffice at this juncture.

When Hurricane Ike hit Galveston, Lundgren owned a beach house in the Bermuda Beach Subdivision on the west end of the Island which was insured by Empire for $244,200.00. After Hurricane Ike, the house, but for its slab, was gone. Empire's adjuster estimated Lundgren's claim to be $174,000.00.[1] Empire had the estimate audited. The audit "readjusted" claim to $149,000.00. Ultimately, Lundgren received a total of $156,00.000 in insurance payments; Empire's payments totaled $139,600.00.

---

[1] All numbers cited are, for the sake of simplicity, approximations.

Lundgren disputed the adequacy of Empire's payment and, on September 10, 2010, sued Empire for breach of contract and the typical claims of bad faith. In October 2012, Lundgren sold the property for $180,000.00 through the City of Galveston/FEMA Buy-Out Plan. The lawsuit was slow to develop, but recently Lundgren retained a Galveston home builder, C.J. Poirer, as her expert witness. Poirer estimated the cost to rebuild a home like Lundgren's to be $277,000.000, substantially more than Empire has paid.

## BREACH OF CONTRACT

Empire argues that its $139,600.00 payment (after credit for the deductible, depreciation and the TWIA payment, all totaling over $21,700.000) exceeds the actual cash value of the home according to its auditor's estimate of $152,000.00. Poirer's estimate of $277,000.000 to rebuild the house is challenged by Empire as fatally unreliable because the house no longer existed for his inspection and he relied upon information provided by Lundgren's husband about the quality of the original home. But this Court has read Poirer's deposition, and Empire's assessments are not fair. For one thing, the house was also no longer in existence when Empire's adjuster provided its pre-audit estimate. More to the point, Poirer testified that he, in his 38 years of building in the Houston/Galveston area had actually built "several houses" in the Bermuda Beach Subdivision and, in fact, he "actually knew this house." It is reasonable to infer Poirer is familiar with what it would cost to build an "up to code" home like the one's at Bermuda Beach; more so, perhaps, than Empire's adjuster. Empire's criticism simply address the weight to be given Poirer's testimony by the fact finder. If Poirer is sufficiently convincing, a jury could find Empire underpaid Lundgren's claim.

This presents a genuine issue of material fact which precludes summary judgment as to Lundgren's breach of contract claim.

### INCREASED COST OF COMPLIANCE

As part of her breach of contract claim, Lundgren seeks to recover some or all of the $30,000.00 insurance benefits available for the Increased Cost of Compliance (ICC) coverage. Empire argues that under the policy, ICC coverage is only available if the insured "relocated (the home) as soon as reasonably possible after the loss, not to exceed two years." Since Lundgren has not rebuilt the home, and two years have passed since it disappeared in Hurricane Ike, Empire believes any claim for ICC benefits is time-barred. This Court respectfully disagrees.

The Court agrees with Lundgren that under the circumstances of this case, equitable tolling would, if necessary, preserve her ICC claim. By March 2009, the City of Galveston, pursuant to a decision of the Texas General Land Office, imposed a one-year moratorium on the rebuilding of any new structures that would be located on the public beach as it existed after Ike to allow the natural vegetation line to be reestablished. Lundgren's home was on an affected property. As a consequence, Lundgren was prohibited from rebuilding her home until, at least, March 2010. A Court should suspend a limitations period when the equities in favor of tolling are great. Barrs v. Sullivan, 906 F.2d 120, 122 (5th Cir. 1990)   Stated another way, equitable tolling will apply "as a matter of fairness when a (party) has been prevented in some extraordinary way from exercising (her) rights." Iavorski v. United States INS, 232 F.3d 124, 129 (2$^{d}$ Cir. 2000)   In the opinion of this Court, being prohibited by the

3

government from rebuilding one's home is a sufficient "extraordinary" event to trigger equitable tolling. However, it also seems that equitable tolling is not relevant here: Lundren filed suit within two years of her loss which, alone, estopped Empire from denying an ICC claim as time-barred under the terms of the very policy she accuses Empire of breaching by underpayment.

### BAD FAITH

The Court is of the opinion, that when the facts and the reasonable inferences that can be drawn from those facts, are viewed in the light most favorable to Lundgren her cognizable bad faith claims must survive summary judgment. In a nutshell, Lundgren has shown that Empire has grossly underpaid her claim. The fact that Empire "audited away" $25,000.00 of its own adjuster's estimate helps to infer an evil motive. Poirer's affidavit swearing that in his "professional opinion it would be impossible to build a home such as the Lundgrens' for $156,530.55" as represented by Empire, completes the inferential showing of bad faith. Empire's argument that Poirer's opinion's should be discarded as inconsistent with his sworn deposition testimony, is without merit. As Lundgren points out, an affidavit which merely supplements rather than contradicts prior deposition testimony is properly considered by the Court in evaluating whether a genuine issue of material fact exists. SWS Erectors v. Infax, Inc., 72 F.3d 489, 496 (5th Cir. 1996)    This Court can certainly understand Empire's frustration, but it is not free to strike Poirer's critical affidavit. Accordingly, the Court finds Lundgren's evidence appears sufficient to establish a submissible case that Empire conducted an unreasonable, result-oriented investigation of Lundren's claim; continues to withhold a

substantial amount of insurance benefits that she is entitled to receive; and left with her no option but to file suit for its recovery. See Universal Life Insurance Co. v. Giles, 950 S.W. 2d 48, 49 (Tex. 1987) (An insurer violates its duty of good faith and fair dealing by denying or delaying payment of a claim if the insurer knew or should have known that it was reasonably clear the claim was covered.) That evidence is sufficient to support Lundgren's statutory and tortious bad faith claims.

CONCLUSION

For the foregoing reasons, it is **ORDERED** that the Motion for Summary Judgment (Instrument no. 119) of Defendant, Empire Indemnity Insurance Company, is **DENIED**.

**DONE** at Galveston, Texas, this \_\_\_\_\_30th\_\_\_\_\_ day of May, 2013.

_____
John R. Froeschner
United States Magistrate Judge