IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | |
|---|---|
| LINDA LUNDGREN<br>and FRED LUNDGREN<br><br>V.<br><br>EMPIRE INDEMNITY INSURANCE<br>COMPANY, ET AL. | §<br>§<br>§<br>§   CIVIL ACTION NO. G-10-351<br>§<br>§<br>§ |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This matter is before the Court with the consent of the Parties pursuant to 28 U.S.C. §636(b)(1)(c). Having now heard the evidence in a short trial on December 9, 2013, the Court issues its Findings of Fact and Conclusions of Law.

1.  In September 2008, the home of Plaintiff, Linda Lundgren, located at 12837 Bermuda Beach Drive in Galveston, Texas, was damaged by Hurricane Ike. At the time, the building was insured under a forced placed policy issued by Empire Indemnity Insurance Company; although offered by Empire, Lundgren did not purchase insurance coverage for the building's contents. Empire adjusted the claim and as of April 2009, it had paid Lundgren about $139,500.00 in benefits.

2.  On June 3, 2009, Lundgren submitted a Proof of Loss to Empire for $254,000.00 including a claim for contents benefits. Empire denied any additional payment.

3.  On September 10, 2010, Lundgren, represented by the Merlin Law Group, filed suit against Empire for breach of contract.

4. On October 6, 2009, the Merlin firm moved to withdraw citing "irreconcilable differences"; the Motion was granted on that same day.

5. On October 2, 2010, after some preliminary communications, Lundgren entered into an "Attorney-Client Contingency Fee Agreement" with Intervenor, Attorney Ronald A. Ortman, for representation against Empire. The contract provided, *inter alia*, that Ortman "may withdraw . . . for good cause. Good cause includes . . . (Lundgren's) refusal . . . to follow (Ortman's) advise on a material matter, or any other fact or circumstance that would render (Ortman's) continuing representation unlawful or unethical." The contract further provided that if Ortman withdrew, "in the event there is any net recovery obtained by (Lundgren, she) remains obligated to pay (Ortman) for the reasonable value of all services rendered" to the date of withdrawal.

6. On October 14, 2010, Intervenor, Ronald A. Ortman, filed a Motion to Appear *Pro Hac Vice* for Lundgren, which was granted on October 18, 2010.

7. During his representation, Ortman determined that Lundgren had no legitimate claim for contents coverage and tried to convince Lundgren, whose interests were being handled completely by her husband, Fred Lundgren, to abandon the claim. However, Lundgren continually refused to do so. As a result, Ortman, who viewed the contents claim to be potentially fraudulent, filed a Motion to Withdraw which was granted by the Court on March 29, 2011. Thereafter, Ortman intervened in this cause and filed a counter-claim to protect his interest in attorney's fees. The Court severed and abated Ortman's intervention pending the resolution of Lundgren's claims against Empire.

8. In August 2012, new counsel appeared for Lundgren and on or about September 11, 2013, Lundgren and Empire settled their portion of the case.

9. On October 23, 2013, this Court, following a Hearing in which Ortman was now represented by counsel, Paul LaValle, ordered that $4,000.00 of the settlement funds be paid into the Registry of the Court as security for Ortman's fees.

10. The Court finds that Ortman had good cause to withdraw as counsel for Lundgren because Lundgren insisted that he continue to urge her claim for contents coverage after Lundgren knew, or should have known, such a claim was baseless and potentially criminal. See Texas Disciplinary Rule 1.15 (A lawyer may withdraw if "the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes may be criminal or fraudulent" or the "client insists upon pursuing an objective . . . with which the lawyer has fundamental disagreement.")   Therefore, pursuant to the contract, Ortman is entitled to recover the reasonable value of all services rendered to the date of his withdrawal.

11. In support of his claim, Ortman simply testified that he "threw myself into the case" and offered, as proof, his 18 page Invoice for the amount of $10,505.96 in attorney's fees. Unfortunately, the Invoice offers little insight into the value of Ortman's 51.40 hours of alleged work. For example, the Invoice reflects that up to the date of his withdrawal, Ortman had about 210 undescribed or insufficiently described email communications. In fact, the Invoice contains only 22 entries of any substantive work like document review, legal research, legal drafting and expert witness consultation, for a total of only 14.1 hours. At trial, Fred Lundgren testified that very few of the emails from Ortman were "of

substance" which, if true, would add some more, but only minimal, substantive work. The Court, therefore, concludes that, at best, the evidence has proven that Ortman is entitled to compensation for 16 hours.

12. Accepting Ortman's billing rate of $200.00 per hour, the Court finds that by use of the required "Lodestar Method" to calculate attorney's fees, the lodestar calculation is $3,200.00. See Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, (5th Cir. 1974)

13. After making the lodestart calculation the Court may decrease or enhance the lodestar based on the relative weights of the twelve (12) factors set forth in Johnson, 488 F.2d at 717-19. The Court will address those factors *seriatum*.

   a. *The time and labor required for the litigation.*

   The Court finds that Ortman expended an excessive amount of time on this case, as reflected in his lengthy Invoice.

   b. *The novelty and difficulty of the questions presented.*

   The Court finds that this case presented simple issues of insurance coverage and easily quantifiable property damage.

   c. *The skill required to perform the legal services properly.*

   The Court finds that no extraordinary legal skills were required to pursue this insurance claim.

   d. *The preclusion of other employment by the attorney due to acceptance of the case.*

   The Court finds that, but for Ortman's self-imposed allotments of excessive time to this case, as reflected in his Invoice, this litigation should not have precluded him from working on other cases.

   e. *The customary fee.*

   The Court finds this factor inapplicable to this property damage claim in its present circumstances.

4

f. *Whether the fee is fixed or contingent.*

The Court finds this factor inapplicable to this property damage claim in its present circumstances.

g. *Time limitations imposed by the client or the circumstances.*

The Court finds that there is no evidence to make this factor relevant.

h. *The amount involved and the result obtained.*

The Supreme Court has made clear that "the most critical factor" in determining the reasonableness of a fee award is the degree of success obtained. Farrar v. Hobby, 506 U.S. 103 (1992) (quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)), see also, Migas v. Pearle Vision, Inc., 135 F.3d 1041, 1048 (5th Cir. 1998)   In this case, the Court finds that there is no evidence that Ortman's efforts contributed in any valuable way to the settlement Lundgren reached with Empire through the efforts of her attorney at that time.

i. *The experience, reputation and ability of the attorney.*

The Court finds there is no evidence to make this factor relevant.

j. *The "undesirability" of the case.*

The Court finds that cases of this nature are, in fact, very desirable to lawyers since property insurance is involved and some degree of liability is obviously present.  Ortman may have found his client undesirable, but the case itself was not.

k. *The nature and length of the professional relationship with the client.*

The Court finds this factor irrelevant to the case at bar.

l. *Awards in similar cases.*

The Court finds this factor irrelevant to this case which involved a straight-forward property damage claim amicably settled between an insurer and an insured.

5

14. This Court finds that the seven Johnson factors relevant to Ortman's claim for fees weigh in favor of a downward adjustment of the lodestar figure and concludes that he should be awarded attorney's fees in the amount of $2,500.00.

15. Paul LaValle also seeks the recovery of attorney's fees for representing Ortman on his breach of contract claim; he has requested payment for 11 hours of work at a rate of $400.00 per hour for a total of $4,400.00. The Court notes that LaValle, during an earlier hearing before this Court, estimated he would devote 5 hours of his time to represent Ortman through trial. During his testimony, LaValle revealed that Ortman had provided him with a trial brief of about 100 pages and sent him about 43 email communications which increased his time involvement. The Court, however, finds that 5 hours is, as LaValle originally predicted, is the reasonable number of hours spent in this case, which took only one hour to try. The Court further finds that, given the simple nature of this case, when evaluated under the relevant Johnson factors, *supra*, an hourly rate of $200.00 is appropriate in this legal community.

## CONCLUSION

It is, therefore, **ORDERED** that Intervenor, Ronald A. Ortman, is **AWARDED** attorney's fees from Plaintiff, Linda Lundgren, in the amount of **$2.500.00**.

It is further **ORDERED** that Paul LaValle is **AWARDED** attorney's fees from Plaintiff, Linda Lundgren, in the amount of **$1,000.00**.

**DONE** at Galveston, Texas, this \_\_\_\_12th\_\_\_\_ day of December, 2013.

_____
John R. Froeschner
United States Magistrate Judge

6